# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS BLANAR,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case No.: 3:21-cv-00167 |
| | : | |
| **QUALFON, INC.,** | : | |
| | : | |
| Defendant. | : | COMPLAINT IN CIVIL ACTION |
| | : | |
| | : | |

Filed on Behalf of Plaintiff:
Dennis Blanar

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:   (412) 545-3015
Fax No.:     (412) 540-3399
E-mail:      jward@jpward.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENNIS BLANAR,** | : |
| Plaintiffs, | : |
| v. | : Case No.: |
| **QUALFON, INC.,** | : |
| Defendant. | : |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Dennis Blanar, by and through the undersigned counsel, J.P. Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, Qualfon, Inc., of which the following is a statement:

**PARTIES**

1. Plaintiff, Dennis Blanar (hereinafter "Plaintiff"), is an adult individual who currently resides at 6740 Route 22 East, New Florence, Pennsylvania 15944.

2. Defendant, Qualfon, Inc. (hereinafter "Defendant"), is a corporation with a place of business located at 1003 Broad Street, Suite #101, Johnstown, Pennsylvania 15906 and its headquarters located at 77 Mack Walters Road, Shelbyville, Kentucky 40065.

**JURISDICTION AND VENUE**

3. This action arises under the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*. ("ADA"), the Age Discrimination in Employment Act 29 U.S.C. § 621, *et seq*. ("ADEA"), and the Pennsylvania Human Relations Act 43 P.S. §§ 951-963 ("PHRA"). This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

1

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

5. Plaintiff dual-filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") regarding his allegations on or about March 22, 2021, under EEOC Charge number 533-2021-01016.

6. On June 22, 2021, Plaintiff was issued a Notice of Suit Rights by the EEOC, and this complaint is now timely filed. A true and correct copy of the Notice is attached hereto, made a copy hereof, and is referenced as "Exhibit A."

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

7. Plaintiff was employed with Defendant in the position of Customer Service Representative and Licensed Insurance Agent.

8. Plaintiff was a seasoned employee who was highly qualified for his position with Defendant. Plaintiff earned regular bonuses from Defendant, was awarded Top Agent in 2019, and received a glass trophy from Defendant for his accomplishments. A true and correct photograph of the award is attached hereto, made a copy hereof, and is referenced as "Exhibit B."

9. At all times relevant hereto, Plaintiff is an individual over the age of 40.

10. Plaintiff was previously diagnosed with Supraventricular Tachycardia ("SVT") which is a condition where Plaintiff suffers from irregular heartbeats and as a result must take medication daily. Further, Plaintiff is immunocompromised because of this disability.

11. The side effects of Plaintiff's above referenced medication and therefore disability is a weakened bladder and thus a frequent need to use the restroom. Plaintiff must also take this medication with food.

12. Plaintiff disclosed this disability, and the effects of the disability-related medication to Defendant.

13. Additionally, Plaintiff was previously diagnosed with dyslexia. Plaintiff also disclosed this disability to Defendant.

14. These disabilities, both individually and collectively, impact Plaintiff's major life activities.

15. Throughout the course of his employment with Defendant, Plaintiff was subjected to a hostile work environment on the basis of his disabilities.

16. On or about a date in 2018, Plaintiff went two minutes over his break time due to his restroom issues related to his disability.

17. Plaintiff was written up and disciplined for this incident.

18. Plaintiff notified his relevant supervisors of his disability and need for frequent restroom breaks. Upon information and belief, this disciplinary incident was never removed from Plaintiff's file.

19. Defendant, by and through supervisor Bam Fabrizio, refused to allow Plaintiff his needed restroom breaks. Plaintiff's physician, Dr. Mark Malicki, M.D. called Defendant and reiterated Plaintiff's need for frequent visits to the restroom.

20. Defendant, by and through Plaintiff's supervisors, stated that, even with the call from Dr. Malicki, Plaintiff's request for bathroom breaks was denied. Further, Defendant stated

they could not reasonably accommodate Plaintiff's request for a time allotment to utilize the restroom.

21. As a result, Plaintiff urinated himself while at work.

22. Plaintiff also notified his relevant supervisors of the need to eat with his medication.

23. Defendant, by and through Plaintiff's relevant supervisors did not allow Plaintiff to eat with his medication.

24. In fact, due to a "clear desk" policy enforced by Defendant, Plaintiff's supervisors physically removed Plaintiff's disability-related medication from Plaintiff's desk on several occasions without Plaintiff's knowledge.

25. When Plaintiff inquired why his supervisors removed his medication from his desk, Plaintiff was informed it was because of the "clear desk" policy. Plaintiff requested accommodation to keep the medication on his desk, however, Defendant denied this request.

26. On or about March of 2020, Defendant sent all employees, including Plaintiff, to work from home due to COVID-19 Pandemic.

27. On or about June of 2020, Plaintiff's dyslexia was exacerbated and Plaintiff made a minor mistake related to one of his assigned tasks.

28. Supervisor Courtney McClain ("Ms. McClain") subsequently disciplined and issued Plaintiff a written warning. Plaintiff explained to Courtney McClain, that he had dyslexia and the mix up was a result of his disability.

29. Ms. McClain stated that Plaintiff's "disability doesn't matter" and continued to discipline Plaintiff for his disability-related mistake. This comment was made *via* phone, in the presence of Plaintiff's coworker, Kathy Stewart ("Ms. Stewart"), as Plaintiff worked from home with Kathy Stewart.

30. On or about June of 2020, Defendant demanded that all employees return to the physical office and required this to happen by August of 2020.

31. Upon learning of Defendant's demands to return to the physical office, Plaintiff informed his relevant supervisors that he felt unsafe returning to the physical office due to his age and heart condition disability, both of which put him at high risk of mortality and severe complications if he were to contract COVID-19.

32. Plaintiff also noted that Defendant did not follow social distancing protocols and required that employees work shoulder-to-shoulder. This made work in the physical office all the more life-threatening for Plaintiff.

33. Plaintiff continued to work remotely until November of 2020.

34. Upon information and belief, Defendant had been temporarily shut down by the Department of Health and Human Services on or about November 2020 due to lack of compliance with COVID-19 safety procedures.

35. Plaintiff was aware of the lack of compliance with COVID-19 safety protocols and subsequently requested leave so that he would not be forced to return to work in-person at Defendant on or about November 25, 2020. This leave was to extend until December 8, 2020. A true and correct copy of the leave approval is attached hereto, made a copy hereof, and is referenced as "Exhibit C."

36. On or about December 2, 2020, Defendant demanded that Plaintiff return to the physical workplace on December 8, 2020. Defendant threatened to terminate Plaintiff if Plaintiff would not return. A true and correct copy of this email is attached hereto, made a copy hereof, and is referenced as "Exhibit D."

37. On or about December 8, 2020, Plaintiff sent an email to Defendant, which explicitly stated that he wished to continue his position remotely due to his medical condition, age, and subsequent heightened risk if he were to contract COVID-19. A true and correct copy of the email is attached hereto, made a copy hereof, and is referenced as "Exhibit E."

38. On or about January 19, 2021, in lieu of allowing Plaintiff the reasonable accommodation of working from home, as he had done successfully for the past months, Defendant terminated Plaintiff.

## COUNT I
## DISCRIMINATION IN VIOLATION
## OF THE ADA AND THE PHRA

39. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

40. The inquiry into whether a person is disabled under the ADA is made on a case-by case analysis. *EEOC v. Grane Healthcare Co.,* 2 F. Supp. 3d 667, 694 (W.D. Pa. 2014); *Chedwick v. UPMC,* 2011 U.S. LEXIS 43239 *35 (W.D. Pa. 2011). To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. *See McGarvey v. Te Connectivity, Ltd.,* 2018 U.S. Dist. LEXIS 124788 *15 (M.D. Pa. 2018); *Northern v. Susquehanna Univ.,* 2018 U.S. Dist. LEXIS 214349 *28 (M.D. Pa. 2018).

41. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142

n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim."

42. Under the ADA, an individual has a disability if she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Thomas v. Trs. Of the Univ. of Pa.,* 2020 U.S. Dist. LEXIS 11056 *9 (E.D. Pa. 2020) (quoting *Lackey v. Heart of Lancaster Reg'l Med. Ctr.,* 704 F. App'x 41, 48 (3d Cir. 2017)).

43. Under the ADAAA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Berkowitz v. Oppenheimer Precision Prods.,* 2014 U.S. Dist. LEXIS 152533 at *8-9 (E.D. Pa. Oct. 28, 2014).

44. Plaintiff is readily disabled within the meaning of the ADA.

45. Plaintiff was qualified to successfully perform the necessary functions of his job, even being awarded Top Agent in 2019. *See* Exhibit "B."

46. Throughout the course of his employment, Plaintiff was written up and berated due to his disabilities.

47. Despite knowledge of Plaintiff's disabilities, Defendant refused to accommodate Plaintiff by allowing him to have frequent restroom breaks.

48. Furthermore, Plaintiff's supervisor Ms. McClain issued written disciplinary warnings to Plaintiff and made discriminatory comments to Plaintiff that his "disability doesn't matter."

49. Specifically, Ms. McClain made this comment after he notified her that the reason why he made a workplace mistake was due to his dyslexia.

50. Furthermore, Defendant would not allow Plaintiff to eat while at his desk in order to take his disability medication, and physically removed Plaintiff's disability-related medication from his desk on several occasions without Plaintiff's knowledge.

51. Defendant also threatened Plaintiff with termination if he did not return to the physical office.

52. Defendant threatened Plaintiff's employment despite knowledge of Plaintiff's comorbidities, disabilities, and the corresponding danger COVID-19 posed to Plaintiff.

53. Plaintiff requested the reasonable accommodation to continue to work from home as he had been for several months.

54. Defendant refused to accommodate Plaintiff and subsequently terminated him .

55. Plaintiff's termination represents a clear adverse action in connection with Plaintiff's disabilities

56. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT II
## FAILURE TO ACCOMMODATE IN
## VIOLATION OF THE ADA AND THE PHRA

57. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

58. To prevail on a claim of failure to accommodate, Plaintiff must establish that "(1) the employer knew about his disability; (2) he requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist him in seeking accommodations; and (4) he could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted)

59. Plaintiff made Defendant aware of his disabilities, and therefore Defendant possessed knowledge of Plaintiff's disabilities.

60. Plaintiff requested reasonable accommodations for his disability.

61. Plaintiff first requested the ability to have frequent bathroom breaks due the affects that his disability-related medication had on his bladder control.

62. In lieu of making reasonable accommodations for Plaintiff's disability, Defendant, by and through Plaintiff's supervisors, refused to allow him to take frequent restroom breaks.

63. As a result, Plaintiff urinated himself at work.

64. Plaintiff secondly requested accommodations to be able to consume food at his desk in order to take his disability medication.

65. In lieu of making reasonable accommodations for Plaintiff's disabilities, Defendant, by and through Plaintiff's supervisors, refused to allow him to consume food at his desk in order to take medication.

9

66. Plaintiff further requested the reasonable accommodation to keep his disability-related medication on his desk at work so that he could remember to take it on time.

67. In lieu of making reasonable accommodations for Plaintiff's disabilities, Defendant, by and through Plaintiff's supervisors, continued to enforce their "clear desk" policy and physically removed the medication from Plaintiff's desk on several occasions, without Plaintiff's knowledge.

68. Lastly, Plaintiff requested the reasonable accommodation to continue to work from home, as he had been successfully doing for several months. Plaintiff requested this accommodation because of the detrimental effects contracting COVID-19 would have on Plaintiff due to his disabilities.

69. In lieu of making reasonable accommodations for Plaintiff's disabilities, Defendant refused to allow Plaintiff to work from home and instead threatened Plaintiff with termination if he did not return to the physical office.

70. Defendant terminated Plaintiff's employment on January 19, 2021, shortly following this accommodation request.

71. Therefore, Defendant failed to make a good faith effort to assist Plaintiff in seeking reasonable accommodations.

72. Plaintiff could have been readily and reasonably accommodated by Defendant for his disability, however Defendant failed to provide even a modicum of good faith or a willingness to engage in the accommodations process.

73. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

74. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT III
## HOSTILE WORK ENVIORNMENT IN
## VIOLATION OF THE ADA AND THE PHRA

75. Plaintiff incorporates the allegations set forth in the paragraphs, above, as if fully set forth at length herein.

76. To prove a hostile work environment claim under the ADA, an employee must show, inter alia, that her workplace was permeated with discriminatory intimidation, ridicule, and insult, sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Americans with Disabilities Act of 1990 § 102 *Hair v. Fayette County of Pennsylvania*, 265 F. Supp. 3d 544 (W.D. Pa. 2017).

77. The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

78. Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 22 (1993)).

79. Throughout the course of his employment, Plaintiff was written up and berated due to the symptoms of his disabilities.

80. Despite the knowledge of Plaintiff's disabilities, Defendant refused to accommodate Plaintiff by allowing him to have frequent restroom breaks, keeping his disability-related medication on his desk, or allowing him to eat with his medication while at his desk.

81. Due to Defendant's refusal to accommodate Plaintiff with frequent restroom breaks, Plaintiff urinated himself at work.

82. Defendant physically removed Plaintiff's medication from his desk on multiple occasions, without Plaintiff's knowledge due to a "clear desk" policy.

83. Due to Defendant's refusal to accommodate Plaintiff with the ability to eat at his desk while taking medication, and keep his medication on his desk, Plaintiff was unable to take his disability-related medication at the proper times and in the proper manner, causing physical side-effects for Plaintiff.

84. Furthermore, Plaintiff's supervisor Courtney McClain wrote Plaintiff up and made the comment that Plaintiff's "disability doesn't matter" after he notified her that the reason why he mixed up numbers was due to his dyslexia.

85. Additionally, Defendant threatened Plaintiff with termination if he did not return to the physical office, despite the knowledge of the detrimental effects COVID-19 would have on someone with Plaintiff's disabilities.

86. Defendant terminated Plaintiff due to his disability and need to work from home given the COVID-19 pandemic.

87. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in him favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

### COUNT IV
### RETALIATION IN VIOLATION
### OF THE ADA AND THE PHRA

88. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

89. The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Plaintiff must prove: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

90. Plaintiff engaged in the protected employee activity of requesting reasonable accommodations.

91. Following Plaintiff's requests for reasonable accommodations, Plaintiff was terminated from his position.

92. This termination took place just weeks following his latest request for reasonable accommodations.

93. Defendant's actions can only be viewed as retaliatory and possessing a causal connection, against Plaintiff due to his requests for reasonable accommodations.

94. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

95. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

### COUNT V
### DISCRIMINATION IN VIOLATION
### OF THE ADEA AND THE PHRA

96. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

97. Under the Age Discrimination in Employment Act (hereinafter "ADEA") it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.S. §623(a)(1).

98. The ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more

calendar weeks in the current or preceding calendar year . . . [or] any agent of such a person." 29 U.S.C.S. §630(b).

99. Under the ADEA, "statutory protection from discrimination extends to individuals who have reached the age of forty." *United States EEOC v. Court of Common Pleas*, 62 F. Supp. 3d 428, 436 (W.D. Pa. 2014 (citing 29 U.S.C.S. §631(a)).

100. Claims under the ADEA "may proceed under a disparate-impact or disparate-treatment theory." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F. 3d 61, 69 (3d Cir. 2017).

101. In order to establish a disparate treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009).

102. Plaintiff is a qualified individual over the age of 40.

103. Plaintiff notified Defendant of his need to continue to work from home due to his "age in regards to [the] COVID-19 pandemic." *See* Exhibit "C."

104. Despite Plaintiff's concerns given his age, Defendant refused to allow Plaintiff to work from home to protect him from the COVID-19 pandemic.

105. In lieu of allowing Plaintiff to work from home, as he had done successfully for several months, Defendant terminated Plaintiff's employment on or about January 19, 2021.

106. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**JURY TRIAL DEMANDED**

                                            Respectfully submitted,

                                            **J.P. WARD & ASSOCIATES, LLC**

Date: September 17, 2021                 By: */s/ Joshua P. Ward*
                                                Joshua P. Ward (Pa. I.D. No. 320347)
                                                Kyle H. Steenland (Pa. I.D. No. 327786)

                                                J.P. Ward & Associates, LLC
                                                The Rubicon Building
                                                201 South Highland Avenue
                                                Suite 201
                                                Pittsburgh, PA 15206

                                                Counsel for Plaintiff